**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| STEVE SCOTTON,<br><br>        Plaintiff,<br><br>vs.<br><br>SUE VAN AMERONGEN, JERRY CONNOLLY, AMY PAULSON, SALLY POTTER, DIANE MUELLER, ED O'BRIEN, JERRY BURT, WILLIAM SOUPENE, JANET ORR, LARRY BRIMEYER, JOHN FETTERS, LARRY THEILEN, PATTY DETTBARN, STEVE HEBRON, DAVE HOLUB, JOHN FAYRAM, LINDA BOFFELI and DURGA SATYAVOLU,<br><br>        Defendants. | No. 08-CV-48-LRR<br><br>**ORDER** |

_____

*TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*   *RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . *2*

*III.*  *LEGAL STANDARD FOR SUMMARY JUDGMENT* . . . . . . . . . . . . . . *2*

*IV.*  *UNDISPUTED MATERIAL FACTS* . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *A.*   *The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *B.*   *Plaintiff's Treatment Prior to UIHC* . . . . . . . . . . . . . . . . . . *3*
    *C.*   *Plaintiff's Treatment After UIHC* . . . . . . . . . . . . . . . . . . . *4*
    *D.*   *Plaintiff Develops Other Wounds* . . . . . . . . . . . . . . . . . . . *5*

*V.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
    *A.*   *Overview of Civil Rights Claims Under 42 U.S.C. § 1983* . . . . . . . *6*
    *B.*   *Overview of Eighth Amendment Claims* . . . . . . . . . . . . . . . . *7*
    *C.*   *Plaintiff's Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
        *1.*   *Allegations against specific defendants* . . . . . . . . . . . . . *10*
        *2.*   *Allegations of deliberate indifference* . . . . . . . . . . . . . . *10*

        a.      *Reasonableness of treatment prior to UIHC visit* . . . . **11**
        b.      *Reasonableness of treatment after visit to UIHC* . . . . . **13**
        c.      *Plaintiff's specific allegations of deliberate indifference* **14**
        d.      *Holding* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
**VI.   CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

## *I. INTRODUCTION*

The matter before the court is Defendants' Motion for Summary Judgment ("Motion") (docket no. 13).

## *II. RELEVANT PROCEDURAL BACKGROUND*

On April 30, 2008, Plaintiff Steve Scotton initiated the instant action. On August 25, 2008, the court entered an Initial Review Order (docket no. 3) pursuant to which it directed the Clerk of Court to file the Complaint (docket no. 4). The Complaint alleges Defendants Sue Van Amerongen, Jerry Connolly, Amy Paulson, Sally Potter, Diane Mueller, Ed O'Brien, Jerry Burt, William Soupene, Janet Orr, Larry Brimeyer, John Fetters, Larry Theilen, Patty Dettbarn, Steve Hebron, Dave Holub, John Fayram, Linda Boffeli and Durga Satyavolu are liable to Plaintiff pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's Eighth Amendment rights under the Constitution of the United States.

On January 14, 2009, Defendants filed the Motion. On April 6, 2009, Plaintiff filed a Resistance (docket no. 18). Defendants did not file a reply. The court finds the Motion fully submitted and ready for decision.

## *III. LEGAL STANDARD FOR SUMMARY JUDGMENT*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of fact exists "when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)). "A 'material' fact is one 'that might affect the outcome of the suit under the governing law[.]'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson*, 477 U.S. at 248). The court must "view the evidence and the inferences that may reasonably be drawn from the evidence in the light most favorable to the nonmoving party." *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am.*, 450 F.3d 816, 820 (8th Cir. 2006) (citation omitted).

## IV. UNDISPUTED MATERIAL FACTS

When viewed in the light most favorable to the non-moving party, Plaintiff, and affording him all reasonable inferences, the undisputed material facts are:

### *A. The Parties*

At all times relevant to the instant action, Plaintiff was an inmate at Anamosa State Penitentiary ("ASP"). Defendants are prison officials employed by ASP.

### *B. Plaintiff's Treatment Prior to Visit to UIHC*

At 8:00 a.m. on July 20, 2007, Plaintiff sought medical care from ASP's Health Services Department ("HSD") for a gluteal wound. HSD nursing staff instructed Plaintiff to return to HSD at 1:00 p.m. in accordance with ASP's policy. Plaintiff returned to HSD at 1:00 p.m. and reported that he had been ill for five days. Nursing staff examined Plaintiff, noted he had a slight fever and referred him to ASP's physician, Dr. Satyavolu. Dr. Satyavolu examined Plaintiff and ordered treatment in the form of sitz baths and warm compressions and asked to be notified if Plaintiff's temperature rose above 100.8 degrees. Dr. Satyavolu scheduled a follow-up appointment in ASP's clinic for July 23, 2007. Later that day, Plaintiff returned to HSD and reported his condition had worsened. Nursing staff advised Plaintiff to continue Dr. Satyavolu's care plan.

On July 21, 2007, Plaintiff returned to HSD and refused the prescribed sitz bath treatment. Later that day, Plaintiff returned to HSD and nursing staff noted that Plaintiff's temperature was 101.2 degrees. After obtaining Plaintiff's temperature, a nurse contacted

3

Dr. Richter, ASP's on-call physician. Dr. Richter ordered ASP to transfer Plaintiff to the University of Iowa Hospitals and Clinics ("UIHC") for further treatment.

At UIHC, Plaintiff received intravenous antibiotics and underwent an incision and drainage procedure for his gluteal wound. Plaintiff remained in UIHC's care until July 30, 2007.

### C. *Plaintiff's Treatment After Visit to UIHC*

On July 30, 2007, UIHC released Plaintiff and he returned to ASP. On that day, a nurse examined Plaintiff and Dr. Satyavolu created a care plan for Plaintiff that included showers and dressing changes two times a day for ten days. Dr. Satyavolu scheduled a follow-up appointment for August 9, 2007. Dr. Satyavolu also prescribed pain medication, including hydromorphone, morphine sulfate and codeine.

On August 2, 2007, Plaintiff returned to HSD seeking additional pain medication. Nurse Susan Van Amerongen discussed the possibility of increasing Plaintiff's medication with Dr. Satyavolu. Dr. Satyavolu discussed this possibility with Plaintiff's UIHC physician. Dr. Satyavolu and Plaintiff's UIHC physician agreed that it would be inappropriate to increase Plaintiff's pain medication.

On August 8, 2007, Plaintiff met with Dr. Satyavolu regarding his gluteal wound. On August 13, 2007, Plaintiff met with Nurse Linda Boffeli regarding his gluteal wound. On August 17, 2007, Plaintiff met with his UIHC physician regarding his gluteal wound. Dr. Satyavolu consulted with the UIHC physician and recommended that ASP medical professionals debride[1] Plaintiff's wound.

Plaintiff refused this treatment, stating he would only allow UIHC surgeons to debride his wound. Plaintiff also requested to use the shower in the HSD facility, which is separate from the general prison population's showers. ASP officials granted this

---

[1]Debridement is the surgical removal of foreign matter and damaged tissue from a wound. Oxford English Dictionary (2d ed. 1989) *available at* http://oed.com.

4

request. On August 31, 2007, Dr. Satyavolu ordered Plaintiff to shower with a special soap each month in order to prevent future injury from a Staph infection.

On September 10, 2007, Dr. Satyavolu referred Plaintiff to UIHC. After returning to ASP from UIHC, Plaintiff visited HSD on September 13 and 14 for follow-up appointments concerning his wound and pain management.

On October 3 and 15, 2007, Plaintiff visited HSD and complained of pain. On October 19, 2007, Dr. Satyavolu examined Plaintiff in response to Plaintiff's complaint of nerve pain originating from his wound. Dr. Satyavolu diagnosed the source of this pain as radiculopathy, prescribed a nerve pain medication, ordered Plaintiff to wear a leg brace and scheduled a follow-up appointment for six weeks later.

### D. Plaintiff Develops Other Wounds

At some time between October 19, 2007, and October 31, 2007, Plaintiff developed another gluteal wound. On October 31, 2007, Dr. Satyavolu and Nurse Mueller treated this wound. On November 1, 2 and 6, 2007, Dr. Satyavolu examined Plaintiff. Dr. Satyavolu opened and drained the wound and monitored Plaintiff periodically throughout the following weeks.

On November 28, 2007, Dr. Satyavolu examined Plaintiff. Dr. Satyavolu noted no signs of infection in the gluteal area; however, she noted several new skin ulcerations. Dr. Satyavolu directed Plaintiff to engage only in limited activity and ordered him to do knee exercises to treat the pain from radiculopathy.

On Saturday, December 8, 2007, Plaintiff reported to HSD and reported that he had a new wound. Nurse Van Amerongen examined the wound and noticed there was no drainage. Nurse Van Amerongen scheduled an appointment with Dr. Satyavolu for the following Monday, December 10, 2007, since Plaintiff reported this condition on a Saturday. On Sunday, December 9, 2007, an ASP corrections officer called HSD on behalf of Plaintiff and reported that Plaintiff was feeling "feverish" and was requesting pain relievers but did not want to be examined by HSD staff. Plaintiff's Appendix ("Pl.

5

App'x") (docket no. 18-4), at 24. Later that day, Plaintiff visited HSD with a slight fever of 99.5 degrees. Nurse Van Amerongen cleaned the wound and deferred further treatment until the scheduled appointment the next day. On December 10, 2007, Dr. Satyavolu examined and treated the new wound.

Between December 10, 2007 and the end of Plaintiff's incarceration on December 3, 2008, he did not develop any new wounds. During the last year of Plaintiff's incarceration, both Dr. Satyavolu and HSD's nursing staff treated and examined Plaintiff eight times. HSD staff also continued to consult with UIHC physicians about Plaintiff's medications during Plaintiff's last year of incarceration.

## V. ANALYSIS

Defendants argue the court should grant the Motion and dismiss Plaintiff's § 1983 claim because the undisputed facts show they reacted reasonably in response to Plaintiff's medical concerns and were therefore not deliberately indifferent to Plaintiff's serious medical needs.

### A. *Overview of Civil Rights Claims Under 42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory [. . .] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Congress designed 42 U.S.C. § 1983 to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, § 1983 itself does not provide any substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "One cannot go

into court and claim a 'violation of §1983,' for § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (§ 1983 "merely provides a method for vindicating federal rights elsewhere conferred.") (internal quotation marks omitted); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means 42 U.S.C. § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.).

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### B. Overview of Eighth Amendment Claims

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. Accordingly, the treatment a prisoner receives in prison and the conditions of his confinement are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Helling v. McKinney*, 509 U.S. 25, 31-32 (1993). In its prohibition of cruel and unusual punishment, the Eighth Amendment places a duty on jail and prison officials to provide inmates with necessary medical attention. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Weaver v. Clark*, 45 F.3d 1253, 1255 (8th Cir. 1995). In this context, a prison official violates the Eighth Amendment by being deliberately indifferent either to a prisoner's existing serious medical needs or to conditions posing a substantial risk of serious future harm. *Weaver*, 45 F.3d at 1255 (comparing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (existing medical needs) with *Helling*, 509 U.S. at 33-34 (risk of future harm to health)).

An Eighth Amendment violation occurs when two requirements are met: (1) "the deprivation alleged must be, objectively, 'sufficiently serious,'" and (2) the "prison official must be, as a subjective state of mind, deliberately indifferent to the prisoner's health or safety." *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled on other grounds) (citations omitted); *see also Helling*, 509 U.S. at 32; *Estelle*, 429 U.S. at 106; *Jolly v. Knudson*, 205 F.3d 1094, 1096 (8th Cir. 2000); *Williams v. Delo*, 49 F.3d 442, 445-47 (8th Cir. 1995). In the context of a prisoner's claim of inadequate medical care, society does not expect that prisoners will have unqualified access to health care. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Consequently, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* (citing *Estelle*, 429 U.S. at 103-04); *see also Wilson*, 501 U.S. at 298.

To constitute an objectively serious medical need or a deprivation of that need, the need or the deprivation either must be supported by medical evidence or must be so obvious that a layperson would recognize the need for a doctor's attention. *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995); *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991); *see e.g., Beyerbach*, 49 F.3d at 1326-27 (insufficient evidence of objective seriousness when there is no medical evidence that delay in treatment produced any harm); *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (insufficient evidence of serious medical need when the medical need claimed is based on bare assertion of inmate). The objective portion of the deliberate indifference standard requires a showing of verifiable medical evidence that a defendant ignored an acute or escalating situation, or that delays adversely affected the prognosis given the type of medical condition present in the case. *See Dulany v. Carnahan*, 132 F.3d 1234, 1243 (8th Cir. 1997) (citing *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) and *Beyerbach*, 49 F.3d at 1326)); *see also O'Neal v. White*, No. 98-2235, 2009 WL 960938, *1 (8th Cir. July 12, 2000) (citing *Crowley*, 109 F.3d at 502).

To meet the second requirement, the subjective component of an Eighth Amendment claim, a prison or jail official must have a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297-303; *Hudson*, 503 U.S. at 8. In a medical needs claim, that state of mind is one of "deliberate indifference" to inmate health. *Farmer*, 511 U.S. at 838-39; *Helling*, 509 U.S. at 32; *Wilson*, 501 U.S. at 302-03; *Estelle*, 429 U.S. at 106. Regarding the meaning of the term "deliberate indifference," the United States Supreme Court has explained:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference . . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

*Farmer*, 511 U.S. at 837. Thus, to establish the second requirement, "deliberate indifference," a plaintiff must assert facts showing the defendant actually knew of and disregarded a substantial risk of serious harm to his or her health or safety. *Id.* at 840-47; *Helling*, 509 U.S. at 32.

Medical treatment that displays "deliberate indifference" violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to the medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05; *see also Foulks v. Cole County*, 991 F.2d 454, 456-57 (8th Cir. 1993). Negligent acts by prison officials, however, are not actionable under § 1983. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986); *Estelle*, 429 U.S. at 106; *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992) (overruled on other grounds). Further, an inmate's disagreement or displeasure with

9

his course of medical treatment is not actionable under § 1983. *Dulany*, 132 F.3d at 1240-44; *Bellecourt v. United States*, 994 F.2d 427, 431 (8th Cir. 1993); *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993) (per curiam); *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990); *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990).

### C. Plaintiff's Claims

#### 1. Allegations against specific defendants

Although the Complaint names eighteen defendants, Plaintiff fails to allege claims against seven of them: Steve Hebron, Dave Holub, Larry Theilen, Ed O'Brien, John Fayram, John Fetters and Larry Brimeyer. Because Plaintiff failed to allege that these Defendants were personally involved with or had direct responsibility for the incidents that injured him, the court shall dismiss them from this action. *See Gully v. Maynard*, 218 F. App'x 551, 552 (8th Cir. 2007) (citing *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985)) (dismissing defendants from the action due to "lack of complaint allegations" against them). Accordingly, the court shall dismiss these Defendants from the instant action.

In addition, the only allegations against Defendants Jerry Burt and William Soupene relate directly to their denial of Plaintiff's grievances. The court may dismiss these Defendants on this basis. *See Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (citing *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding defendants' denial of prisoner's grievance, by itself, does not state a substantive constitutional claim).

In summary, the court shall dismiss the nine Defendants identified above from the instant action.

#### 2. Allegations of deliberate indifference

Plaintiff alleges that the remaining nine Defendants, Sue Van Amerongen, Jerry Connolly, Amy Paulson, Sally Potter, Diane Mueller, Janet Orr, Patty Dettbarn, Linda

10

Boffeli and Dr. Durga Satyavolu, violated his Eighth Amendment rights.[2] Specifically, Plaintiff alleges that Defendants failed to provide him with proper medical care for his gluteal wound.

Defendants argue that Plaintiff's claim must be dismissed because they responded reasonably to Plaintiff's medical needs and therefore were not deliberately indifferent. For purposes of the Motion, Defendants do not dispute the first element of Plaintiff's Eighth Amendment Claim; that is, Defendants concede Plaintiff's injury amounts to an objectively serious medical need. *Beyerbach*, 49 F.3d at 1326. Defendants argue, however, that Plaintiff cannot establish the second, subjective, prong of the deliberate indifference test: whether Defendants were deliberately indifferent to Plaintiff's health or safety. *Id.*

"Acting [or failing to act] with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 844. Conversely, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id*. at 845; *see also Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008) ("An official who acts reasonably, though through hindsight is found to have acted incorrectly, has not violated the Eighth Amendment."). A prison official is not liable for deliberate indifference unless that official "failed to respond reasonably to abate [the prisoner's] risk." *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006).

Accordingly, the court turns to consider whether Defendants acted reasonably in response to Plaintiff's serious medical needs. First, the court analyzes Defendants' response to Plaintiff's medical needs prior to his first visit to UIHC. Then, the court examines Defendants' response to Plaintiff's medical needs following that visit. Finally, the court examines Plaintiff's specific allegations of deliberate indifference.

---

[2] For the remainder of the instant order, the court shall refer to the remaining Defendants as "Defendants."

### a. *Reasonableness of treatment prior to UIHC visit*

The undisputed evidence shows that Plaintiff received reasonable medical care from ASP's medical professionals before prison officials transferred him to UIHC. The facts outlined above demonstrate that Plaintiff received medical care on the first day he sought treatment from HSD. That day, nursing staff evaluated him and referred him to Dr. Satyavolu. Shortly thereafter, Dr. Satyavolu examined Plaintiff, prescribed a specific treatment and established a follow-up plan so she would be notified if Plaintiff's temperature rose above 100.8 degrees. Evidence shows that Dr. Satyavolu addressed Plaintiff's medical needs by prescribing treatment and ordering continued surveillance of his condition. Dr. Satyavolu took timely steps to treat Plaintiff's serious medical needs. After the first day of treatment, Plaintiff received medical attention from nurses on four separate occasions and attention from physicians on two separate occasions before ASP medical professionals transferred him to UIHC.[3]

Plaintiff contends that Defendants were deliberately indifferent to his serious medical needs during this period because, on the first day Plaintiff sought treatment; that is, on July 20, 2007, Defendants did not examine Plaintiff immediately upon his arrival at 8:00 a.m., but instead, made Plaintiff wait until 1:00 p.m. in accordance with ASP policy. Plaintiff also argues Defendants were deliberately indifferent because they delayed their decision to refer him to UIHC. Plaintiff argues that these delays caused him to undergo two surgeries.

Construing the evidence in the light most favorable to Plaintiff, the court finds that the evidence shows Defendants acted reasonably in response to Plaintiff's medical needs prior to his transfer to UIHC. Plaintiff produced no evidence other than his own complaints to contradict the wealth of medical evidence presented by Defendants showing

---

[3] The court also notes that, at this time, Plaintiff did not comply with the treatment prescribed by HSD's medical staff. Specifically, Plaintiff refused treatment prescribed by Dr. Satyavolu.

that Defendants reasonably responded to and provided treatment for his medical needs prior to his transfer to UIHC.

Plaintiff also claims that, prior to his treatment at UIHC, Dr. Satyavolu created a care plan that was unsatisfactory, which amounts to deliberate indifference. Plaintiff is incorrect. By definition, a claim of deliberate indifference cannot succeed if the plaintiff can only show negligence or medical malpractice. *See Estelle* 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) (dismissing case as frivolous because "[n]either differences of opinion nor medical malpractice state an actionable Constitutional violation"). As the Eighth Circuit Court of Appeals held in *Dulany*, "[i]n the face of medical records indicating that treatment was provided [. . .] an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." *Dulany,* 132 F.3d at 1240.

In summary, the court finds that Defendants did not act with deliberate indifference to Plaintiff's medical needs prior to his first visit to UIHC.

### b. *Reasonableness of treatment after visit to UIHC*

Defendants also argue that Plaintiff's claim relating to treatment he received after he returned from UIHC fails to satisfy the standard for deliberate indifference. The court agrees. The record shows Plaintiff received ample medical care from HSD medical professionals after he was discharged from UIHC. Indeed, during this second period, medical records indicate that nursing staff, prison physicians and UIHC physicians examined and treated Plaintiff more than forty times.

The court recognizes that the number of visits by Plaintiff to HSD does not by itself negate a claim of deliberate indifference. *See Jolly*, 205 F.3d at 1097 ("multiple contacts with medical personnel do not always preclude a finding of deliberate indifference.").

13

However, the content of Plaintiff's medical records shows that Defendants administered multiple treatments for pain management and provided reasonable care for Plaintiff's wounds during these visits. This precludes a finding of deliberate indifference. As in *Jolly*, "[t]he record does not support a finding that the medical care in this case was 'so inappropriate as to evidence intentional maltreatment.'" *Id.* (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990). Rather, the record indicates that Defendants responded reasonably to Plaintiff's medical conditions.

For instance, on at least five occasions during the three weeks following Plaintiff's return to ASP, Plaintiff received care from HSD nursing staff and physicians. Plaintiff also had a follow-up appointment with UIHC. Dr. Satyavolu consulted with Plaintiff's UIHC physician concerning Plaintiff's pain medication and UIHC physicians recommended the debridement of Plaintiff's wound.[4] On two occasions, Plaintiff reported to HSD staff that he had new lesions in his gluteal area. HSD medical staff treated these new wounds. The uncontested facts demonstrate that Defendants responded reasonably to the risk presented by Plaintiff's medical condition.

### c. *Plaintiff's specific allegations of deliberate indifference*

Plaintiff also argues that certain omissions or actions give rise to a deliberate indifference claim. The court addresses these allegations individually.

First, Plaintiff alleges that, on Saturday, December 8, 2007, Defendants were deliberately indifferent to Plaintiff's medical needs because they delayed treating a new abscess. Medical records indicate, however, that on this date, Nurse Van Amerongen examined Plaintiff and instructed him to use warm compresses until Dr. Satyavolu could see him the following Monday. Nurse Van Amerongen also ordered him to return to HSD if he experienced any problems. The court does not have an opinion as to the medical

---

[4] The court notes that Plaintiff refused to allow Dr. Satyavolu to debride his wound.

accuracy of Nurse Van Amerongen's treatment; however, it is clear that she was not deliberately indifferent to the risk created by Plaintiff's medical condition on this occasion.

The next day, HSD received a call from an officer who reported that Plaintiff felt "feverish" and wanted medication, but did not want to be physically examined. Pl. App'x at 24. Later that day, Plaintiff returned to HSD with a fever of 99.5 degrees. In response to Plaintiff's slight fever, HSD nursing staff consulted with Dr. Satyavolu, who started Plaintiff on antibiotics. The court finds the weight of the evidence, when construed in the light most favorable to Plaintiff, shows that Plaintiff received adequate medical attention and treatment with respect to this condition. The detailed medical records supplied by the parties show that Defendants responded reasonably to the risk presented by Plaintiff's condition.

Plaintiff also complains that the delay between Plaintiff's first encounter with HSD nursing staff on July 20, 2007 and the time Dr. Satyavolu prescribed antibiotics amounts to deliberate indifference. As stated earlier, this delay does not amount to deliberate indifference. At best, these facts give rise to a negligence or medical malpractice claim.[5] A plaintiff "must show more than negligence, more even than gross negligence," to satisfy an Eighth Amendment claim. *Jolly*, 205 F.3d at 1096 (citing *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)).

Plaintiff also claims that Defendants failed to follow his UIHC physician's orders concerning Plaintiff's treatment, which constitutes deliberate indifference. The court first notes that it is unclear whether Defendants failed to follow direction given by UIHC physicians, because there is no evidence supporting this allegation. In any event, the Eighth Circuit Court of Appeals has repeatedly held that prison physicians are allowed to follow their own medical judgment. *See Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996)

---

[5] The court expresses no opinion on whether Plaintiff's claims give rise to a medical malpractice or negligence claim.

(citing *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988) ("[p]hysicians are entitled to their own medical judgment.")).  In other words, Defendants were within their right to establish their own treatment plan.  Plaintiff does not have a deliberate indifference claim with respect to this issue.

### d. *Holding*

Because the court finds that Defendants responded reasonably to the risk created by Plaintiff's medical condition, the court finds Defendants were not deliberately indifferent to Plaintiff's serious medical needs.

## VI. CONCLUSION

For the foregoing reasons, the Motion (docket no. 13) is **GRANTED** and the Complaint (docket no. 4) is **DISMISSED**.

**IT IS SO ORDERED.**

**DATED** this 29th day of June, 2009.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA